**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICK HENNIGAN,**

                      **Plaintiff,**

           **v.**                                  **5:06-CV-426**
                                                      **(FJS/GJD)**

**MATT DRISCOLL, individually and in his official**
**capacity as Mayor of the City of Syracuse;**
**FRANK FOWLER, individually and as Police Sergeant**
**of the City of Syracuse; and CITY OF SYRACUSE,**

                      **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF LEON R. KOZIOL** | **LEON R. KOZIOL, ESQ.** |
| 1518 Genesee Street | |
| Utica, New York 13502 | |
| Attorneys for Plaintiff | |
| | |
| **CITY OF SYRACUSE OFFICE OF** | **BNAI R. SILVERBUSH, ESQ.** |
| **CORPORATION COUNSEL** | **JAMES P. McGINTY, ESQ.** |
| 233 East Washington Street, City Hall, Room 301 | |
| Syracuse, New York 13202 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 4, 2004, Plaintiff, a former police officer with the Syracuse Police Department

("SPD") filed this action. *See, generally*, Complaint.  Generally, Plaintiff alleges that he was

forced to resign from the SPD as a result of statements that Defendants Fowler and Driscoll made

to Syracuse-area newspapers.[1]  More specifically, Plaintiff alleges the following claims: (1) Defendants violated his Fourteenth Amendment rights by forcing him to resign and denying his request for a name-clearing hearing; (2) Defendants defamed him with their statements to the newspapers which were printed on January 29, 2005, February 3, 2005, February 6, 2005, and April 27, 2005; and (3) Defendants caused him to suffer severe emotional distress as a result of statements that Defendants Fowler and Driscoll made to the press, which allegedly led to Plaintiff's coerced resignation from the SPD.  *See* Complaint at ¶¶ 14-17, 19, 21-22, 35-37.[2]

Currently before the Court is Defendants' motion for summary judgment.  *See* Dkt. No. 16.  In support of their motion, Defendants argue that the Court should dismiss Plaintiff's claims for four reasons: (1) the record before the Court does not contain any evidence establishing, nor does Plaintiff's complaint allege facts plausibly suggesting, that Plaintiff had a property interest in his job which entitled him to due process under the Fourteenth Amendment to the United States Constitution, *see* Defendants' Memorandum of Law at 11-12; (2) even if the Court finds that Plaintiff had a property interest entitling him to due process, the record does not contain any evidence establishing, nor does Plaintiff's complaint allege facts plausibly suggesting, that Defendants' alleged defamatory statements were the impetus for Plaintiff's resignation from the

---

[1] Plaintiff alleges that the statements were first published in an article about Plaintiff's recent employment with the SPD and an incident in which Plaintiff was involved during August 1999.  *See* Complaint at ¶¶ 14-15.

[2] In his complaint, Plaintiff also asserts a First Amendment free speech claim and a Fourteenth Amendment equal protection claim.  *See, generally*, Complaint.  However, in his response to Defendants' motion for summary judgment, Plaintiff effectively moved to dismiss these claims voluntarily pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure because, despite having conducted discovery, he was "unable to secure sufficient evidence to maintain [them]."  *See* Declaration of Leon R. Koziol dated February 26, 2008, at ¶¶ 38, 39. Based on these statements, the Court grants this motion and dismisses these two claims.

SPD; and, therefore, Defendants did not infringe upon Plaintiff's property interest in violation of

due process, *see* Defendants' Reply at ¶¶ 23-24; (3) the record before the Court does not contain

any evidence establishing, nor does Plaintiff's complaint allege facts plausibly suggesting, that

the statements that Defendants Fowler and Driscoll made to the media were uttered with malice

with intent to injure Plaintiff, *see* Defendants' Memorandum of Law at 14; and (4) the record

before the Court does not contain any evidence establishing, nor does Plaintiff's complaint allege

facts plausibly suggesting, that Defendants engaged in extreme or outrageous conduct resulting in

Plaintiff's alleged emotional distress, *see id.* at 15.


## II. BACKGROUND

On March 4, 2004, Plaintiff submitted an application for employment as a police officer

with the SPD.  *See* Defendants' Statement of Material Facts at ¶ 1; Plaintiff's Statement of

Material Facts at ¶ 1.  At the time, he was a police officer with the Town of Clay Police

Department, where his duties involved, among other things, enforcing Town of Clay laws and

ordinances at a salary of approximately $32,000 per year in a police department that was smaller

than the SPD.  *See* Declaration of James McGinty dated January 25, 2008 ("McGinty Decl.") at

Exhibit "N" at 8, 32, 34, 36-40, 43; Dkt. No. 17, Part 2, at 13.  In his application to the SPD,

Plaintiff stated, in part, that he was "[f]orced to resign from [the] Onondaga County Sheriffs

Department in 1999 after successful completion of field training program, the reason(s) for

which were never communicated to me personally by any Onondaga County Sheriffs Department

Official."  *See* Dkt. No. 17, Part 2, at 26.

On or about November 25, 2004,[3] Plaintiff authorized the release of confidential background information to the SPD for purposes of his employment application.  *See* Defendants' Statement of Material Facts at ¶ 2; Plaintiff's Statement of Material Facts at ¶ 2.

On or about December 6, 2004, the SPD made Plaintiff a conditional offer of employment with a starting date of December 27, 2004.  *See* Defendants' Statement of Material Facts at ¶ 3; Plaintiff's Statement of Material Facts at ¶ 3.  The conditional offer of employment stated as follows:

> As a result of our assessment of the information you have provided on the recruit information form, and your successful completion of the physical agility portion of the Onondaga County Civil Service Exam, we are offering you a position as Police Officer.  This is a conditional offer, for hiring on December 27, 2004 only.  Based on the number of position openings and your standing among other qualified candidates, a final and unconditional offer of employment will be made to you upon successful completion of the remainder of the background investigation.  Such investigation includes but is not limited to medical, polygraph, and psychological tests.  Do not terminate any present employment at this time.

> Please understand that this is a conditional offer of employment.

*See* McGinty Decl. at Exhibit "C."

At some point between approximately November 25, 2004, and December 13, 2004, Martin Henry, a Syracuse Police Officer, conducted a Recruit Investigation of Plaintiff's background.[4]  During the background investigation, Plaintiff disclosed to Officer Henry details

---

[3] Defendants' Statement of Material Facts indicates that this event occurred on November 25, 200*5*.  Given the supporting materials, the Court deems this a typographical error and determines the correct date to be November 25, 200*4*.

[4] The exact starting date of this investigation is unknown to the Court after a review of the evidence that the parties submitted.  *Compare* Defendants' Statement of Material Facts at ¶ 4

(continued...)

about an incident that occurred in August 1999. *See* Defendants' Statement of Material Facts at ¶ 11; Plaintiff's Statement of Material Facts at ¶ 11; *see also* Dkt. No. 17, Part 4, at 6 (Memorandum from P.O. Martin Henry to Commanding Officer Human Resources, dated 12/13/04).

On December 13, 2004, the SPD's Candidate Selection Committee met with Plaintiff and, by a five-to-two vote, recommended that the SPD not hire Plaintiff. *See* Defendants' Statement of Material Facts at ¶ 5; Plaintiff's Statement of Material Facts at ¶ 5; *see also* Dkt. No. 17, Part 4, at 7 (Memorandum from P.O. Martin Henry to Commanding Officer Human Resources, dated 12/13/04, indicating recommendation of Police Candidate Selection Committee on 12/13/04). However, on December 27, 2004, the SPD hired Plaintiff at a salary of approximately $48,000 per year. *See* Defendants' Statement of Material Facts at ¶ 6; Plaintiff's Statement of Material Facts at ¶ 6; *see also* McGinty Decl. at Exhibit "M" at 43. The continuation of his employment was contingent upon successful completion of a probationary period of fifty-two weeks. *See* Defendants' Statement of Material Facts at ¶ 6; Plaintiff's Statement of Material Facts at ¶ 6. Specifically, paragraph two of his Letter of Understanding and Acknowledgment, which Plaintiff signed on December 27, 2004, stated, "I [Plaintiff] acknowledge that my employment with the Syracuse Police Department is contingent upon successful completion of a probationary period of fifty two (52) weeks . . . ." *See* McGinty Decl. at Exhibit "F."

On January 29, 2005, a Syracuse-area newspaper printed an article about Plaintiff's recent employment with the SPD and the August 1999 incident that Plaintiff had disclosed to Officer

---

[4](...continued)
*with* Plaintiff's Statement of Material Facts at ¶ 4.

Henry during the Recruit Investigation.  *See* McGinty Decl. at Exhibit "Q" at 11.  The article quoted Defendant Driscoll as saying, "If one scintilla of [the incident] is true, [Plaintiff] will not be a member of our Police Department[.]"  *See id.*

On January 31, 2005, Plaintiff tendered his resignation as a police officer with the SPD through a hand-written, signed Inter-Departmental-Memo to the SPD.  *See* McGinty Decl. at Exhibit "H."  The letter stated, in its entirety, "Sir: I hereby resign my position as police officer effective 1400 hrs, Monday 31 Jan 05."  *See id.*[5]

On February 8, 2005, Plaintiff sent a letter to Police Chief Steven Thompson rescinding his resignation from January 31, 2005, and requesting a post-termination hearing.  *See* Defendants' Statement of Material Facts at ¶ 8; Plaintiff's Statement of Material Facts at ¶ 8. Specifically, Plaintiff's letter stated as follows:

> I am writing this letter to inform you that I am rescinding my resignation from Monday, January 31st, 2005 as it was made under duress and to reiterate my demand for a POST TERMINATION HEARING that was originally made on my behalf Tuesday, February 1st, 2005.  I would also like to add that this rescinding of my resignation was going to be originally made on Thursday, February 3rd 2005 but when personnel was contacted I was told that I had to meet with Lieutenant J. Culeton on February 4th at 8:30am.  I notified personnel via telephone that I was unable to make that appointment as I would be out of Town until February 7th and needed to reschedule.  I was never re contacted by anyone regarding this.

*See* McGinty Decl. at Exhibit "I."

On February 17, 2005, Chief Thompson sent Plaintiff a letter stating that he did not consent to the rescission of Plaintiff's resignation and that post-termination hearings did not

---

[5] Plaintiff asserts that he tendered his resignation involuntarily.  *See* Plaintiff's Statement of Material Facts at ¶ 7.

apply to resignations.  *See* Defendants' Statement of Material Facts at ¶ 9; Plaintiff's Statement of

Material Facts at ¶ 9.[6]  Specifically, Chief Thompson's letter stated as follows:

> This letter is in response to yours of February 8, 2005,
> wherein you informed me that you were rescinding your
> resignation from the Syracuse Police Department which was
> received and accepted by me on January 1, 2005, and which you
> now assert was made under duress.[7]
>
> Please be advised that, pursuant to applicable regulation, a
> resignation tendered by one in civil service may not be withdrawn
> without the consent of the appointing authority.  In this case I am
> the appointing authority and I do not consent to the rescission or
> withdrawal of your resignation.  Based upon the circumstances of
> our meeting on January 31, 2005, I must reject your current
> assertion that your resignation was in any way coerced or procured
> through duress.  As we discussed then, and as I continue to believe
> now, your resignation was in the best interest of both yourself and
> of the Police Department.
>
> In regard to your demand for a "post-termination hearing,"
> please be advised that I am not aware of any such procedure that
> would relate to a resignation.  I can only suggest that if you believe
> you are aggrieved in this matter you may want to consult an
> attorney to discuss whatever options may be available to you.

*See* McGinty Decl. at Exhibit "J."

---

[6] Defendants' Statement of Material Facts includes an additional fact that reads,
"[Plaintiff]'s basis for contending that [D]efendant Fowler initiated a campaign against him."  *See*
Defendants' Statement of Material Facts at ¶ 10.  In addition to failing to complete the sentence,
Defendants failed to support the phrase with a citation to the record.  *See id.*  As a result,
Defendants have failed to meet their threshold burden with regard to this factual assertion; and,
therefore, Plaintiff does not need to deny this statement.

[7] The Court notes that the letter appears to be mistaken with regard to this date because
the overwhelming record evidence indicates that Plaintiff tendered his resignation on January 31,
2005, not January 1, 2005.

## III. DISCUSSION

**A.      Summary judgment standard**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Emma v. Schenectady City Sch. Dist.*, 28 F. Supp. 2d 711, 718 (N.D.N.Y. 1998) (citations omitted), *aff'd without opinion*, 199 F.3d 1332 (2d Cir. 1999). However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B.      Plaintiff's due process claim**

*1. Property interest*

Plaintiff alleges that he was deprived of his property interest in continued employment with the SPD when he was allegedly terminated on January 31, 2005. "[A] property interest arises only when an individual possesses 'a legitimate claim of entitlement' to continued job tenure." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 447 (2d Cir. 1980) (citation omitted). "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light,*

-8-

*Gas & Water Div. v. Craft*, 436 U.S. 1, ___, 98 S. Ct. 1554, 1560 (1978) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)) (other citation omitted).

Under New York law, an employment contract that makes no specific provision for duration is presumed to be terminable at-will. *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983). An at-will employee holds no protectable property interest in his employment where, under state law, employment is held at the whim of the employer. *See Bishop v. Wood*, 426 U.S. 341, 345-57 (1976); *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002); *Quinn*, 613 F.2d at 447 ("'[U]nless there is a definite period of employment specified by contract, the hiring is one at will.'" (quotation omitted)).

In *Quinn*, the city's mayor appointed the plaintiff as Rehabilitation Director of Syracuse Model Neighborhood Corporation ("SMNC"). *See Quinn*, 613 F.2d at 442. Based on both his conversations with the Executive Director of SMNC prior to employment and the SMNC handbook, which stated that "staff is hired on a probationary status for a period of 90 days," the plaintiff inferred that his employment as Rehabilitation Director was tenured. *See id.* at 442. His formal letter of appointment, however, "was silent concerning the precise terms of employment." *Id.* In February 1976, SMNC funds went missing, and the Board of Directors dismissed the plaintiff. *See id.* at 443. The plaintiff claimed that the dismissal was an unconstitutional deprivation of property without due process; however, the court found that he had no "legitimate claim of entitlement" because his employment agreement did not specify a term of employment, and relevant state law stated that at-will employees did not hold a cognizable property interest in their employment. *See id.* at 447-48.

In this case, Plaintiff was a probationary employee.[8]  As a result, he held no cognizable property interest in his employment with the SPD.  *See Quinn*, 613 F.2d at 447-48; *see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996) ("The very nature of a probationary appointment – as the term itself implies – is that employment may be terminated should the employer be dissatisfied."); *accord Fitzgerald v. Feinberg*, No. 98 CIV 8885, 1999 WL 619584, *3 (S.D.N.Y. Aug. 16, 1999) ("Probationary or at-will employees lack a 'legitimate claim of entitlement,' and therefore lack a property interest in the expectation of continued employment." (quotation and other citations omitted)).

Moreover, Plaintiff's argument that he was not a probationary employee because he was granted tenure as a result of being a lateral transfer from the Clay Police Department is without merit for two reasons.  First, a public employee who changes roles within his or her public employment cannot "carry over" any tenure granted in one role "to create a legitimate expectation of an implied form of tenure" in his or her new role.  *Donato*, 96 F.3d at 629 ("[Plaintiff, an assistant principal, cannot] plausibly urge that the District's previous decisions to grant her tenure in her roles as teacher and department chairperson 'carry over' to create a legitimate expectation of an implied form of tenure as assistant principal.  These prior years of service were in different positions, and state law generally does not allow nonqualifying service to create tenure." (citations omitted)); *accord Levine v. McCabe*, 357 F. Supp. 2d 608, 617 (E.D.N.Y. 2005).  Here, Plaintiff's role as a police officer with the Town of Clay Police Department, which involved,

---

[8] The acceptance letter that Plaintiff signed on December 27, 2004, stated in paragraph two that "employment with the Syracuse Police Department is contingent upon successful completion of a probationary period of fifty two (52) weeks . . . ."  *See* McGinty Decl. at Exhibit "F."

among other things, enforcing Town of Clay laws and ordinances at a salary of approximately $32,000 per year in a relatively small police department, was different than his role as a probationary police officer with the SPD, which involved, among other things, enforcing City of Syracuse laws and ordinances at a salary of approximately $48,000 per year in a relatively larger police department.

Second, even assuming, for the sake of argument, that Plaintiff's prior employment with the Clay Police Department was sufficient to confer upon him tenure at the SPD, Plaintiff voluntarily opted to suspend or delay his entitlement to such tenure at the SPD by signing a Letter of Understanding and Acknowledgment on December 27, 2004, in which he acknowledged that his employment with the SPD was "contingent upon successful completion of a probationary period of fifty two (52) weeks . . . ."  *See* McGinty Decl. at Exhibit "F."  Courts have held analogous agreements creating or extending probationary periods to constitute valid and enforceable suspensions of entitlements to tenure.  *See Emma*, 28 F. Supp. 2d at 718-20 (holding that, due to agreement to extend probationary period, "plaintiff had no legal entitlement to tenure such that defendants' failure to confer tenure would give rise to a due process violation").

### 2. Liberty interest

The Supreme Court has made clear that there is no constitutionally protected property or liberty interest in one's reputation.  *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Paul v. Davis*, 424 U.S. 693, 701 (1976).  However, when an individual is defamed or stigmatized in the course of his dismissal from public employment, he does have a cognizable liberty interest.  *See*

-11-

*Codd v. Velger*, 429 U.S. 624, 628 (1977); *Paul*, 424 U.S. at 709.  This claim, which is known as a "stigma-plus" claim, *Patterson v. Utica*, 370 F.3d 322, 330 (2d Cir. 2004), is accorded only procedural due process protection – specifically, the right to an opportunity to refute the charges and clear one's name.  *See Codd*, 429 U.S. at 627; *Paul*, 424 U.S. at 710; *Roth*, 408 U.S. at 573.

To defeat a motion for summary judgment on a "stigma-plus" claim, a plaintiff must show four things.  First, a plaintiff must show that the government employer made stigmatizing statements about him.  *See Patterson*, 370 F.3d at 330.  "Stigmatizing statements" are defined as those that "call into question plaintiff's 'good name, reputation, honor, or integrity.'"  *Id.* (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980)).  Moreover, "[s]tatements that 'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession'" are stigmatizing.  *Id.* (quotation and footnote omitted).

Second, the plaintiff must show that "the falsity of these stigmatizing statements [i]s an issue."  *Id.* (citing *Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir. 1987))*; see also Marinaccio v. Boardman*, No. 1:02 CV 00831, 2005 WL 928631, *20 (N.D.N.Y. Apr. 19, 2005) ("To the extent Plaintiffs claim the language regarding [the individual plaintiff's] ban is stigmatizing, same cannot be the basis for their liberty interest claim because its truth is not disputed.").

Third, the plaintiff must show that "the[] stigmatizing statements were made public."  *Patterson*, 370 F.3d at 330 (citation omitted).  Statements made "only to the plaintiff, and only in private, ordinarily [do] not implicate a liberty interest."  *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir.

-12-

2005) (citation omitted).

Finally, the plaintiff must show that the stigmatizing statements were made in the course of a discharge or significant demotion.  *See Patterson*, 370 F.3d at 330 ("[P]laintiff must show the stigmatizing statements were made concurrently in time to plaintiff's *dismissal*" (emphasis added)); *see also Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988) (citations omitted).

As an initial matter, the Court finds that Plaintiff has adduced sufficient record evidence to create at least a question of fact with regard to the first element of his claim.[9]  Moreover, the Court finds that Plaintiff has adduced sufficient record evidence to create at least a question of fact with regard to the third element of his claim.[10]  However, as explained below, the Court finds that Plaintiff has not adduced sufficient record evidence to create a genuine issue of material fact with regard to either the second or fourth elements of his claim.  Moreover, in the alternative, the Court finds that, even if Plaintiff has adduced sufficient record evidence to create a genuine issue of material with regard to these elements of his claim, he has not adduced any admissible record evidence that Defendants deprived him of his liberty without due process of law.

---

[9] The parties dispute whether the statements Defendants Driscoll and Fowler made to the Syracuse newspaper were stigmatizing.  *Compare* Complaint at ¶¶ 14, 15 *with* Reply Declaration of James McGinty dated March 3, 2008, at ¶¶ 18-20.  Although the Court is not convinced that the statements Defendants Driscoll and Fowler made were, in fact, stigmatizing, the Court finds that Plaintiff has adduced sufficient record evidence such that a rational fact finder could conclude that the statements were stigmatizing.

[10] Specifically, it is undisputed that the individually-named Defendants' statements were published in a Syracuse newspaper.  *See* McGinty Decl. at Exhibit "G."

### *a. Whether Defendants' statements were false*

Defendant Driscoll made the following statements about Plaintiff in the January 29, 2005 newspaper article regarding Plaintiff's hiring and his involvement in an incident at a bar in August 1999:

> 1.    The investigation is not over.  *See* McGinty Decl. at Exhibit "G" at 1.
>
> 2.    "If one scintilla of [the allegations that Plaintiff used racial epithets and waved a gun around at a bar in 1999] is true, he [Plaintiff] will not be a member of our Police Department.  *See id.*
>
> 3.    Councilor Van Robinson approached me about Plaintiff's appointment.  *See id.* at 2.
>
> 4.    I took the councilors' concerns to the Chief of Police and instructed him to conduct a "complete and thorough investigation" and was under the impression the investigation was ongoing.  *See id.*

Defendant Fowler made the following statements about Plaintiff in the January 29, 2005 newspaper article regarding Plaintiff's hiring and his involvement in an incident at a bar in August 1999:

> 1.    Councilor William Ryan, the chair of the Public Safety Committee, and I "heard the tape may have shown [Plaintiff] waving a gun and using racial epithets."  *See* McGinty Decl. at Exhibit "G" at 1.
>
> 2.    "We made our position clear.  I'd like to see the situation dealt with.  Right now, this situation is ugly enough as it is.  I'm going to wait and see how this all plays out[.]"  *See id.*
>
> 3.    When the hiring committee voted against hiring Plaintiff, it had "limited information" about the August 1999 incident.  *See id.* "The subject [of the incident] was introduced," and the committee was concerned.  "We have a lot of information about it now.  Back then [when the hiring committee made its decision], we didn't," which is why the committee voted against hiring Plaintiff.  *See id.*

4.     The hiring committee learned of the videotape and agreed
to probe further.  *See id*. at 2.

### *(i). Analysis of Defendant Driscoll's statements*

"Although Plaintiff need not prove that the stigmatizing statements were false, he must be able 'to raise the falsity of [the] stigmatizing statements as an issue.'"  *Wiese v. Kelley*, No. 08-CV-6348, 2009 WL 2902513, *4 (S.D.N.Y. Sept. 10, 2009) (quoting *Patterson*, 370 F.3d at 330).  "Moreover, 'in order to be stigmatized enough to be unconstitutionally deprived of liberty,' Plaintiff 'must show that []he was dismissed amid allegations of dishonest, illegal or immoral conduct.'"  *Id.* (quoting *Garrett v. Mazza*, No. 97-CV-9148, 2001 WL 123862, at *6 (S.D.N.Y. Feb. 13, 2001)) (other citation omitted).

With these guidelines in mind, the Court finds that no rational fact finder could conclude that Defendant Driscoll's statements to the newspaper were false.  The record evidence supports Mayor Driscoll's first, third and fourth statements and are not disputed.  *See* McGinty Decl. at Exhibit "S" at 33-43.  In addition, the second statement, which appears to be the crux of Plaintiff's falsity claim with regard to Defendant Driscoll, is not false, either facially or implicitly. This is because it does not contain (1) charges that Plaintiff was guilty of dishonesty or immorality or (2) accusations that call into question Plaintiff's good name, reputation, honor, or integrity.  *See Wiese*, 2009 WL 2902513, at *4 ("[N]one of the statements allegedly leaked to the press by Defendant contain facts capable of being proven false [because] [n]othing in th[e] letter or statement contained charges that Wiese was 'guilty of dishonesty or immorality,' or accusations that 'call[ed] into question . . . [Wiese]'s good name, reputation, honor, or integrity.'"

-15-

(quotation omitted)).  Instead, the statement – which is more akin to an assurance or promise – merely asserts that, if the allegations are found to be true, then Plaintiff will no longer be a member of the SPD.  *See* McGinty Decl. at Exhibit "G" at 1.


### (ii). Analysis of Defendant Fowler's statements

As with Defendant Driscoll's statements, the Court finds that no rational fact finder could conclude that Defendant Fowler's statements to the newspaper were false.  This is because, again, none of these statements contain (1) charges that Plaintiff was guilty of dishonesty or immorality or (2) accusations that call into question Plaintiff's good name, reputation, honor, or integrity.

The Court notes that it is mindful of the fact that Defendant Fowler's first statement that he and Councilor Ryan "heard the tape may have shown [Plaintiff] waving a gun and using racial epithets," is a statement that seemingly invokes Plaintiff's good name, reputation, honor, or integrity.  However, this statement is not an accusation that Plaintiff is a racist or a person who improperly brandished a firearm; rather, the statement is merely a self-admitted account of what Defendant Fowler had *heard* about the tape.  *See Wiese*, 2009 WL 2902513, at *4 ("Because the Wiese letters contained no information capable of being proved false, and do not contain allegations of 'dishonest, illegal, or immoral conduct[,]' they were not stigmatizing.").


### b. Whether Plaintiff's resignation from the SPD was voluntary

As a general rule, because resignations are presumed to be voluntary, "[i]f an employee resigns rather than being terminated, the employee cannot claim that his liberty was taken away without due process."  *Nocera v. N. Y. City Fire Comm'r*, 921 F. Supp. 192, 201 (S.D.N.Y. 1996)

(citations omitted).  However, there are two situations in which that presumption may be overcome.  *See id.*; *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995); *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992).  More specifically, resignations are deemed involuntary where (1) the employer has obtained the resignation by making a material misrepresentation to the employee or (2) the employer has obtained the resignation by coercion or duress.  *See Nocera*, 921 F. Supp. at 201; *Hargray*, 57 F.3d at 1568; *Stone,* 855 F.2d at 174.

In this case, Plaintiff does not allege that the SPD made any material representations to him about his resignation but instead alleges that his resignation was coerced and made under duress.  *See* Plaintiff's Statement of Material Facts at ¶ 7.  To determine whether an employee's resignation was voluntary under a theory of duress or coercion, the court must look at the totality of the circumstances surrounding the resignation.  *See Nocera*, 921 F. Supp. at 202; *Hargray*, 57 F.3d at 1568; *Stone*, 855 F.2d at 174.  In *Hargray*, the most-instructive case on point, the Eleventh Circuit looked at a number of factors, including

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Hargray*, 57 F.3d at 1568 (citations omitted); *see also Stone*, 855 F.2d at 174 (listing same factors except "advice of counsel" factor).

With regard to the first factor identified in *Hargray*, the court uses an objective standard when assessing whether the employee had "some alternative;" and, therefore, the employee's subjective evaluation of the situation is irrelevant.  *See Nocera*, 921 F. Supp. at 202; *Hargray*, 57

-17-

F.3d at 1568; *Stone*, 855 F.2d at 174.  With regard to the second *Hargray* factor, resignations where the only alternative is termination may be found voluntary because the employee in fact has a choice: resign or "stand pat and fight."  *Hargray*, 57 F.3d at 1568 (citation omitted). Moreover, where a plaintiff is an at-will employee, the threat of termination is never deemed coercive.  *See Nocera*, 921 F. Supp. at 201-02.  Simply put, "[b]ecause the government has the legal right to terminate a probationary employee, . . . a threat to take an action that the public employer is legally entitled to take cannot constitute duress or coercion."  *Id.* at 201-02 (citations omitted).

At his deposition, Plaintiff testified that he was coerced into resigning from the SPD because he was handed a resignation letter to sign, he was implicitly told that he had to sign the letter or he would be fired, he did not have a chance to consult with an attorney after being handed the letter, and he was "emotional" at the time he signed the letter.  *See* McGinty Decl. at Exhibit "M" at 43-47 (attaching pages "41" to "45" of Plaintiff's deposition transcript).[11]  Plaintiff also testified that he was emotional because he did not anticipate being asked to resign at the meeting with the SPD police chief on January 31, 2005, and that the shock from this request was exacerbated by the *Post-Standard* article published two days earlier.  *See id*. at 44-47.  Finally, Plaintiff testified that, "if I was thinking clearly, I would have just said, 'Fire me,' but I ended up signing [it]" under emotional duress of coercion.  *See id*. at 46-47, 52-54.

In *Hargray,* the plaintiff made a similar argument: that he gave his resignation under duress after he was provided a "choice" between resigning or facing criminal charges.  *See*

---

[11] Plaintiff testified that a third party, Marty Henry, "pre-drafted" the resignation letter. *See* McGinty Decl. at Exhibit "M" at 43-52.

*Hargray*, 57 F.3d at 1569.  However, the Eleventh Circuit rejected this argument because it found, among other things, that (1) the plaintiff had several days notice that charges might be brought against him; (2) he had spoken with his wife about the situation; (3) when presented with the charges, he understood them and the grounds for them; (4) he was free to leave the police station before signing his resignation; and (5) he did not ask for more time to consider the decision or to speak with an attorney.  *See id.* at 1569-70.  The Eleventh Circuit concluded that, because the plaintiff was provided adequate notice of pending employment challenges and had an opportunity to speak with others about the situation, his assertion that he did not have a real alternative to resigning was unconvincing because he had the opportunity to "stand pat and fight."  *See id.* at 1568 (citation omitted).

Here, Plaintiff's argument that he was not given an alternative to resignation and that he did not understand the nature of the choice he was given fails for similar reasons.  First, Plaintiff admits that he was aware of the newspaper article's existence "three or four days" before it was actually published.  *See* McGinty Decl. at Exhibit "M" at 55-56; McGinty Decl. at Exhibit "R" at 10-12.  Second, because he was "worried" about the possibility he would be terminated during these days, Plaintiff spoke with the Police Benevolent Association President, among others, about the situation.  *See* McGinty Decl. at Exhibit "M" at 55-56; McGinty Decl. at Exhibit "R" at 10-15.[12]  Third, Plaintiff testified that he called SPD personnel "to let them know that there was a [sic] article . . . either the day before or . . . right when the article came out" and that "[o]bviously

---

[12] It is worth noting that, before previously resigning from his position with the Onondaga Sheriff's Department for similar reasons, Plaintiff consulted with an attorney and his father, an Assistant District Attorney, about the decision, indicating that, as of January 31, 2005, he had already received some legal advice on the situation presented to him.  *See* McGinty Decl. at Exhibit "M" at 24-27; McGinty Decl. at Exhibit "R" at 25, 38.

[the Personnel Department] already knew [about the article]."  *See* McGinty Decl. at Exhibit "M" at 48.  Fourth, Plaintiff admits that he understood that he had a choice between resigning and being terminated.  *See id.* at 47 (Q: "Did you understand that if you didn't sign this [resignation letter] that you would be fired; is that what you're telling me?"  A: "Correct.")  Finally, Plaintiff did not ask for additional time to make his decision or the opportunity to consult with an attorney before he signed the resignation letter.  *See* McGinty Decl. at Exhibit "R" at 39-40.

In sum, the Court finds that Plaintiff has failed to adduce admissible record evidence that his resignation from the SPD was the result of any coercion or duress that SPD personnel caused. The Court emphasizes that, where a plaintiff is an at-will employee, as was Plaintiff, courts never deem the threat of termination coercive.  *See Nocera*, 921 F. Supp. at 201-02.

> ### c. Assuming that Plaintiff had adduced evidence that he enjoyed a protected liberty interest in his reputation, whether he was deprived of that liberty interest without due process of law

Even if the Court assumes, for the sake of argument, that Plaintiff has raised falsity as an issue and that his resignation was not voluntary, "[P]laintiff must also demonstrate that his liberty was deprived without due process of law."  *Walsh v. Suffolk County Police Dep't*, No. 06-CV-2237, 2008 WL 1991118, *13 (E.D.N.Y. May 5, 2008), *aff'd*, No. 08-2624, 2009 WL 1874282 (2d Cir. July 1, 2009).  In a case involving an at-will government employee, all that due process requires, for purposes of defeating a stigma-plus claim, is "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing . . . ."  *Segal v. City of N. Y.*, 459 F.3d 207, 214 (2d Cir. 2006); *see also Patterson*, 370 F.3d at 335.  Moreover, "New York provides for such a [post-termination] name-clearing hearing pursuant to CPLR Article 78, which

allows a dismissed municipal employee an avenue for challenging his termination as arbitrary

and capricious and contrary to law." *Walsh*, 2008 WL 1991118, at *14.  As a result, district

courts within the Second Circuit have repeatedly dismissed claims of deprivation of a liberty

interest where an Article 78 proceeding was available to the plaintiff, but he failed to avail

himself of that proceeding.  *See, e.g., id.* at *13-*14 ("The Court finds that plaintiff cannot satisfy

this component in this case as a matter of law because of the availability of an Article 78

proceeding. . . . [P]laintiff never brought an Article 78 proceeding in state court and has not set

forth any basis for concluding the available state remedy was inadequate.  Where, as here, the

plaintiff had available adequate process, he cannot be said to have been 'deprived of due process

simply because [he] failed to avail [himself] of the opportunity.'" (quoting *HANAC*, 101 F.3d at

881)).

        Based on the current record, the Court finds that Plaintiff cannot establish that he was

denied the process he was due because he had available to him an Article 78 proceeding.  With

regard to the issue of notice, the Court notes that, as an initial matter, SPD was not legally

required to notify Plaintiff of his option to pursue an Article 78 proceeding.[13]  The Court also

notes that, in any event, Defendants satisfied any such notice requirement on February 17, 2005,

when Chief Thompson sent Plaintiff a letter stating, among other things,

                In regard to your demand for a "post-termination hearing,"

────────────────────

    [13] *Walsh*, 2008 WL 1991118, at *14 n.13 ("To the extent plaintiff argues that the police
department did not make him aware of the Article 78 proceeding and such failure should bar
defendants' reliance on the existence of such a remedy to preclude his claim, the Court finds that
argument is unpersuasive.  Plaintiff has cited no law indicating that employers in these
circumstances are required to inform employees of the availability of an Article 78 proceeding
and the Court concludes there is no such notice requirement in this particular situation." (citation
omitted)).

> please be advised that I am not aware of any such procedure that would
> relate to a resignation.  I can only suggest that if you believe you are
> aggrieved in this matter you may want to consult an attorney to discuss
> whatever options may be available to you.

*See* McGinty Decl. at Exhibit "J."

In sum, for all the above-stated reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's due process claim.

**C.      Plaintiff's pendent state-law claims**

In addition to his due process claim, Plaintiff asserts two state-law claims – defamation and intentional infliction of emotional distress.  "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'"  *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497, 2007 WL 1703914, *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159 (1986)) (other citation omitted), *aff'd*, 551 F.3d 122 (2d Cir. 2008).  "Moreover, the Second Circuit has recognized that the dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where . . . the resolution of the state law claims entails resolving additional legal and factual issues."  *Walsh*, 2008 WL 1991118, at *15 (citation omitted).

Since it has dismissed all of Plaintiff's federal claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See Coon v. Willet Dairy, LP*, Nos. 5:02-CV-1195, 5:04-CV-917, 2007 WL 2071746, *7 (N.D.N.Y. July 17, 2007).

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court dismisses Plaintiff's state-law claims without prejudice.[14]


## IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to dismiss his First Amendment free speech claim and his Fourteenth Amendment equal protection claim voluntarily is **GRANTED**, and these two claims are **DISMISSED** with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to the remainder of Plaintiff's federal claims, and those claims are **DISMISSED** with prejudice; and the Court further

---

[14] The Court notes that, pursuant to 28 U.S.C. § 1367(d), "[t]he period of limitations for any [of Plaintiff's state-law] claim[s] . . . shall be tolled while the claim[s] [are] pending and for a period of 30 days after [they are] dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

**ORDERS** that Plaintiff's state law claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: September 30, 2009
    Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge